### N THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

**UNITED STATES**                                                                     **PLAINTIFF**

**v.**                                         **CASE NO. 5:17-CR-50005**

**OSCAR DAVID ZUNIGA-CHAVEZ**
**a/k/a OSCAR DAVID CHAVEZ-ZUNIGA**                                **DEFENDANT**

### OPINION & ORDER

Currently before the Court is the Motion to Suppress (Doc. 16) filed by Defendant Oscar David Zuniga-Chavez a/k/a Oscar David Chavez-Zuniga ("Zuniga") on February 20, 2017. The Government filed a Response (Doc. 18) on February 27, 2017, and supplemented its Response with relevant transcripts and audio on March 7, 2017 (Doc. 20). The Motion is now ripe for decision, and for the reasons discussed below, is **DENIED**.

### I. DISCUSSION

Zuniga was arrested in connection with a methamphetamine distribution investigation on December 8, 2016. Following his arrest, Zuniga was Mirandized and then gave a recorded interview to law enforcement agents, during which he made several incriminating admissions. On January 11, 2017, a grand jury returned a one count Indictment (Doc. 6) charging Zuniga with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Zuniga filed the instant Motion to Suppress on February 20, 2017. It argues that Zuniga's December 8, 2016 interview with law enforcement was involuntary because an officer threatened to arrest his girlfriend and take away her son. Accordingly, Zuniga's argument continues, his interview must be suppressed.

The use of an involuntary statement to obtain a conviction is an evil long prohibited by the Constitution, "for want of the essential elements of due process." *Brown v. State of Mississippi*, 297 U.S. 278, 287 (1936). Involuntary statements obtained through "coercive police activity" must accordingly be suppressed. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "[T]he ultimate issue of 'voluntariness' is a legal question requiring independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 110 (1985). In the Eighth Circuit, voluntariness is determined based on whether a statement "was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (quotation omitted). In making this determination, the Court looks to the totality of the circumstances, "including law-enforcement officials' conduct and the defendant's capacity to resist pressure." *United States v. Gannon*, 531 F.3d 657, 661 (8th Cir. 2008). This does not mean that the police must conduct interrogations with both arms figuratively tied behind their backs. Rather, they may still apply tactics such as "playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices," *United States v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011), so long as "the overall impact of the interrogation [does not cause] the defendant's will to be overborne," *id.* at 428-29 (quotation omitted). Thus, a confession made after "detectives [allegedly] repeatedly told [the defendant] that unless he confessed, his wife would be charged," was not involuntary because there was no evidence that his "will was overborne and his capacity for self-determination critically impaired." *Gannon*, 531 F.3d at 662.

As in *Gannon*, the Court can find no evidence that the officer's suggestion that Zuniga's girlfriend would go to prison[1] overbore his will and critically impaired his capacity for self-determination. At the beginning of Zuniga's interview—after he was Mirandized—an officer asked Zuniga whether he loves his girlfriend. (Doc. 20-2, p. 1). The officer suggested that law enforcement had enough evidence to send her to federal prison, and insinuated that Zuniga's cooperation would be helpful to her. *Id.* at 1-5. This is exactly the sort of "threat" the Eighth Circuit deemed insufficient in *Gannon*.

Turning from law enforcement's allegedly coercive threat to Zuniga's conduct in response, there is simply no indication that statements made during his interview were involuntary. Based on the Court's *in camera* review of the audio, the tone of the interview was, for the most part, quite relaxed. Zuniga can even be heard laughing or chuckling with an interpreter on several occasions. (Doc. 20-3 and accompanying audio at 02:11, 04:00, 04:10, 06:55, 09:15, and 10:19). Also of note is the fact that Zuniga denied additional accusations and deflected questions throughout the interview. For example, he denied that his vehicles were purchased with drug money, contended that his pistols were used for recreation and not the drug trade, denied transporting drugs to Las Vegas, and denied using a money-counting machine and a heat sealer for counting and sealing drug money (though he admitted he purchased them with this intent). (Doc. 20-3). This is

---

[1] The Court reviewed the audio and the transcripts of Zuniga's interview, (Docs. 20-2, 20-3, and accompanying audio), and could not find any instance of law enforcement officers threatening to separate Zuniga's girlfriend from her son. The Court thus interprets Zuniga as suggesting that the officer's threat to imprison his girlfriend constituted an implicit threat to separate her from her son. Whether implicit or explicit, the so-called threat makes no difference in the Court's analysis; Zuniga's statement was voluntary in either event.

3

strong evidence that his will was not overborne; he remained fully capable of denying accusations that he thought (or wanted to represent) were not true.

Virtually every other relevant factor points in the same direction. *See* 18 U.S.C. § 3501(b) (listing factors to determine voluntariness); *Boslau*, 632 F.3d at 428 (same). Zuniga appears to be fully literate, and at 37 years old is neither young to the point of naivety nor elderly to the point of infirmity. He was fully aware of the nature of the accusations against him, and the total duration of the interview was slightly under 30 minutes. He was advised of his constitutional rights verbally and in writing (both in Spanish, his native tongue). *See* Docs. 20-1, 20-2. In sum, Zuniga's suggestion that his statements were involuntary is completely without merit.

For these reasons, Zuniga's Motion to Suppress (Doc. 16) is **DENIED**. The Court will reset the date for the jury trial and related pretrial deadlines by separate order.

**IT IS SO ORDERED** on this 15th day of March, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

4